IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Herman Kelly, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:06-cv-228 (JJF) |
| v. ) | |
| ) | |
| MBNA American Bank, National ) | |
| Arbitration Forum, ) | |
| Wolpoff & Abramson, L.L.P., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT NATIONAL ARBITRATION FORUM'S REPLY BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

Richard D. Kirk (Bar ID # 922)
Ashley B. Stitzer (Bar ID # 3891)
Kelly M. Dawson (Bar ID # 4786)
THE BAYARD FIRM
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com
kdawson@bayardfirm.com

Attorneys for National Arbitration Forum

Dated: June 19, 2006

627819v4

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .........................................................................................................................1

    I.     THE COMPLAINT AND ANSWERING BRIEF ARE IMPERMISSIBLE COLLATERAL ATTACKS ON THE ARBITRATION AWARD ......................................................................................1

    II.    THE ALLEGATIONS OF MISCONDUCT BY NAF FAIL BECAUSE NAF IS ENTITLED TO ABSOLUTE ARBITRAL IMMUNITY, OR ALTERNATIVELY, BECAUSE PLAINTIFF FAILED TO CHALLENGE THE ALLEGED MISCONDUCT PURSUANT TO THE FEDERAL ARBITRATION ACT ............................................................2

        A.    NAF Is Entitled to Absolute Arbitral Immunity ..............................2

        B.    The Proper Procedure to Challenge Any Alleged Misconduct By NAF Is to Seek Vacation of the Arbitration Award Under the Federal Arbitration Act ...................................................................................................4

CONCLUSION .......................................................................................................................5

# TABLE OF AUTHORITIES

Page

Cases

*Attorney General v. Pelletier*,
134 N.E. 407 (Mass. 1922) ................................................................................................. 3

*Austern v. Chicago Bd. of Options Exch., Inc.*,
898 F.2d 882 (2d Cir. 1990) ............................................................................................... 2

*Corey v. N.Y. Stock Exch.*,
691 F.2d 1205 (6th Cir. 1982) ........................................................................................... 1

*Douglas v. City of Jeanette, Pa.*,
130 F.2d 652 (3d Cir. 1942) ............................................................................................... 3

*Hawkins v. Nat'l Ass'n of Sec. Dealers Inc.*,
149 F.3d 330 (5th Cir. 1998) .............................................................................................. 3

*Long v. Converse*,
91 U.S. 105, 106 (1875) ..................................................................................................... 3

*Major League Baseball Players Ass'n v. Garvey*,
121 S.Ct. 1724 (2001) ..................................................................................................... 4-5

*McCarty v. Derivium Capital, LLC*,
2005 WL 3320564 (D. Conn. Nov. 21, 2005) ................................................................... 2

*New England Cleaning Serv., Inc. v. Am. Arbitration Ass'n*,
199 F.3d 542 (1st Cir. 1999) .............................................................................................. 3

*Prudential Bache-Sec. v. Nat'l Ass'n of Sec. Dealers Dispute Resolution Inc.*,
289 F. Supp. 2d 438 (S.D.N.Y. 2003) ................................................................................ 2

*Ross v. MBNA Bank*,
No. 3:04-CV-607, 2005 WL 2334297 (E.D. Tenn. 2005) ................................................ 3

*Ruckenbroad v. Mullins*,
133 P.2d 325 (Utah 1943) .................................................................................................. 3

*United Paperworks Int'l Union, AFL-CIO v. Misco, Inc.*,
484 U.S. 29 (1987) ............................................................................................................. 5

# TABLE OF AUTHORITIES, continued

Page

Statutes

9 U.S.C. § 12 ............................................................................................................. 1, 2

9 U.S.C. § 10 ................................................................................................................. 4

9 U.S.C. § 10(a) ............................................................................................................ 4

8 U.S.C.A. § 43 ............................................................................................................. 3

28 U.S.C.A. § 41(14) .................................................................................................... 3

# ARGUMENT[1]

## I. THE COMPLAINT AND ANSWERING BRIEF ARE IMPERMISSIBLE COLLATERAL ATTACKS ON THE ARBITRATION AWARD

In the Request and Motion to Strike, Quash Defendants 's [sic] Motion to Dismiss Complaint Dated May 22, 2006 [D.I. 14] (the "Answering Brief"), Plaintiff requests an order vacating the arbitration award. *See* Answering Brief ¶ 9. Plaintiff's request must be denied because it is an impermissible collateral attack on the award.

As discussed more fully in NAF's Opening Brief, the Federal Arbitration Act provides the exclusive remedy for challenging acts that taint an arbitration award. *See Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 111-12 (6th Cir. 1982) (affirming the District Court's decision that the plaintiff's claims against the defendant for the acts of the arbitrators are barred by arbitral immunity and those based on the arbitration director's acts constitute no more than an impermissible collateral attack on the arbitrators' award.).

Section 12 of the Federal Arbitration Act provides that a party seeking an order vacating, modifying or correcting an arbitration award *must file and serve a motion in the United States court in and for the district wherein the award was made* within three months after the award is filed or delivered. 9 U.S.C. § 12 (emphasis added). Even if Plaintiff had filed a proper motion to vacate, arbitrators and their sponsoring organizations are not a necessary party to a motion to vacate an arbitration award, and dismissing NAF as a party would be appropriate. *Corey*, 691 F.2d at 1212 (finding arbitrators and their sponsoring organizations immune from suit and stating that the FAA provides the exclusive remedy for challenging the award.)

---

[1] Terms not defined hereon shall have the meaning ascribed to them in Opening Brief in Support of Defendant National Arbitration Forum's Motion to Dismiss Complaint [D.I. 9] (the "Opening Brief").

Plaintiff failed to comply with the requirements of the Federal Arbitration Act and to file timely a motion in the United States district court where the arbitration was held. Therefore, Plaintiff's attempt to seek an order from this Court vacating the arbitration award is improper and must be denied.

II.  **THE ALLEGATIONS OF MISCONDUCT BY NAF FAIL BECAUSE NAF IS ENTITLED TO ABSOLUTE ARBITRAL IMMUNITY, OR ALTERNATIVELY, BECAUSE PLAINTIFF FAILED TO CHALLENGE THE ALLEGED MISCONDUCT PURSUANT TO THE FEDERAL ARBITRATION ACT**

To the extent that the Answering Brief alleges any misconduct by NAF, it is entitled to full arbitral immunity.[2] Alternatively, the proper procedure to challenge any alleged misconduct by NAF, as the arbitration administrator, is to seek an order vacating the award under the Federal Arbitration Act.

### A. NAF Is Entitled to Absolute Arbitral Immunity

Arbitrators and their sponsors are immune from suit for jurisdictional determinations made in their capacity as arbitrators. *Prudential Bache-Sec. v. Nat'l Ass'n of Sec. Dealers Dispute Resolution, Inc.*, 289 F. Supp. 2d 438, 440 (S.D.N.Y. 2003). *See also McCarty v. Derivium Capital, LLC*, 2005 WL 3320564, at *1-2 (D. Conn. Nov. 21, 2005) (stating "[a]rbitral immunity extends beyond arbitrators themselves to organizations that sponsor arbitrations."); *Austern v. Chicago Bd. of Options Exch., Inc.*, 898 F.2d 882, 885-87 (2d Cir. 1990) (noting the Second, Sixth and Eighth Circuit's recognition of "extension of arbitral immunity to encompass boards [that] sponsor

---

[2] The Answering Brief suggests that Plaintiff misunderstands NAF's involvement in the dispute between Plaintiff and MBNA and/or W&A. The factual assertions in the Complaint and the Answering Brief relate to conduct by defendants MBNA and W&A, not NAF. *See* Answering Brief at ¶¶ 1, 2, 7, 8. NAF acted merely as an arbitration administrator, and does not engage in any collection practices.

arbitration."); *New England Cleaning Serv., Inc. v. Am. Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999) ("In proper circumstances, organizations that sponsor arbitrations, as well as arbitrators themselves, enjoy this immunity from civil liability.").

A sponsoring organization's immunity extends to the administrative tasks it performs, insofar as these are integrally related to the arbitration. *New England Cleaning Serv., supra* (citations omitted). *See also Hawkins v. Nat'l Ass'n of Sec. Dealers Inc.*, 149 F.3d 330, 332 (5th Cir. 1998) (stating arbitrators and sponsoring organizations are immune from civil liability arising from actions taken in the course of conducting arbitration proceedings.); *Ross v. MBNA Bank*, 2005 WL 2334297, at *3 (E.D. Tenn. September 23, 2005) (National Arbitration Forum is immune from suit by acting in a quasi-judicial role).

The case law relied on by Plaintiff in the Answering Brief is distinguishable from the present case because it does not involve arbitrators or discuss arbitral immunity. *See Attorney General v. Pelletier*, 134 N.E. 407 (Mass. 1922) (discussing removal of the defendant from the office of district attorney); *Long v. Converse*, 91 U.S. 105, 106 (1875) (discussing the jurisdiction of the Supreme Court under the Judiciary Act which "authorizes this court to re-examine the decisions of the highest court of a State in certain cases, 'where any title, right, privilege, or immunity is claimed under' any statute of the United States"); *Douglas v. City of Jeanette, Pa.*, 130 F.2d 652 (3d Cir. 1942) (discussing District Court jurisdiction under the Civil Rights Act, codified at 8 U.S.C.A. § 43, and Section 24(14) of the Judicial Code, codified at 28 U.S.C.A. § 41(14), to decide issues arising under the fourteenth amendment); *Ruckenbroad v. Mullins*, 133 P.2d 325, 326 (Utah 1943) (discussing "whether or not a duly licensed attorney appointed by the court

to defend an indigent accused is entitled to payment for his services from the County in which the appointment and defense were made.").

As discussed more fully in NAF's Opening Brief, any claim asserted against NAF in Plaintiff's Complaint [D.I. 1] could only be based on NAF's performance of its administrative tasks as the arbitration administrator or sponsor in the arbitration between Plaintiff and MBNA and/or W&A. Therefore, NAF is entitled to arbitral immunity and the claims against NAF must be dismissed as a matter of law.

> **B. The Proper Procedure to Challenge Any Alleged Misconduct By NAF Is to Seek Vacation of the Arbitration Award Under the Federal Arbitration Act**

The proper procedure to challenge any alleged misconduct by NAF, as the arbitration administrator, is to seek vacation of the award under the Federal Arbitration Act.

Section 10 of the Federal Arbitration Act states, *inter alia,* that a United States court in the district where the arbitration award was made may enter an order vacating an award upon application of any party to the arbitration when the award was procured by corruption, fraud, or undue means, where an arbitrator acted with partiality or corruption, where the arbitration was procedurally improper or arbitrator misbehavior prejudiced a party's rights, or where an arbitrator exceeded or imperfectly executed his powers. 9 U.S.C. § 10(a).

Where arbitrator misconduct is alleged, "as a rule the court must not foreclose further proceedings by settling the merits according to its own judgment of the appropriate result" because it would "improperly substitute a judicial determination for the arbitrator's decision that the parties bargained for in their agreement." *Major League*

*Baseball Players Ass'n v. Garvey*, 121 S.Ct. 1724, 1728 (2001). "Instead, the court should *simply vacate the award. . . .*" *Id.* (emphasis added). *See also United Paperworks Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 41 (1987).

Plaintiff alleges in the Answering Brief that NAF "lied to court slander and libel verbal and written words false information about plaintiff things that are not true or correct about loan credit balances [sic]", [Answering Brief at ¶ 6], and "started a misconduct of fraud, harassments, by wrongful billing, retaliations against plaintiff for filing his claims to the us governments for help [sic]", [Answering Brief at ¶ 8].

Plaintiff's exclusive remedy to challenge the arbitration award based on the alleged misconduct by NAF is pursuant to the Federal Arbitration Act. Plaintiff failed to file timely a motion in the United States court in and for the district wherein the award was made. Therefore, Plaintiff's attempt to seek relief from the arbitration award in the Answering Brief is improper and must be denied.

## CONCLUSION

For all the foregoing reasons, NAF respectfully requests that the Court grant the Motion and dismiss the Complaint as it relates to NAF.

Dated: June 19, 2006                    THE BAYARD FIRM

*/s/ Kelly M. Dawson*
Richard D. Kirk (No. 922)
Ashley B. Stitzer (No. 3891)
Kelly M. Dawson (No. 4786)
222 Delaware Avenue, 9th Floor
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com
kdawson@bayardfirm.com

Attorneys for National Arbitration Forum

627819v4                                   5

# UNREPORTED CASE LAW

Westlaw.

Slip Copy                                                                                                                    Page 1
Slip Copy, 2005 WL 3320564 (D.Conn.)
**(Cite as: Slip Copy)**

Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
William E. MCCARTY, Plaintiff
v.
DERIVIUM CAPITAL, LLC, et al. Defendants.
**No. 3:03 CV 00651 MRK.**

Nov. 21, 2005.

William E. McCarty, West Haven, CT, pro se.
Satya P. Asija, Shelton, CT, for Plaintiff.
Kenneth Rosenthal, Brenner, Saltzman & Wallman, New Haven, CT, Victor A. Machcinski, Jr., Krebsbach & Snyder, New York, NY, James R. Byrne, Michael T. McCormack, William H. Champlin, III, Tyler Cooper & Alcorn, Hartford, CT, for Defendants.

*Ruling and Order*

KRAVITZ, J.
**\*1** This case arises out of a claim by Plaintiff William McCarty against Defendants Derivium Capital, LLC and Wachovia Bank, NA for an allegedly deficient loan and relating to one or more brokerage accounts. The parties' contract stated that any disputes would be resolved through arbitration to be conducted in Charleston, South Carolina, under the auspices and rules of Defendant American Arbitration Association ("AAA"). Mr. McCarty originally brought his dispute against Derivium and Wachovia to arbitration-but in New York, not in South Carolina as specified in the parties' contract. As a result, the AAA assigned the arbitration to be conducted in South Carolina in accordance with the parties' agreement. Mr. McCarty also asked the AAA to exempt him from the arbitration-filing and case-service fees, but the AAA only granted a deferral of both fees until the conclusion of the case, when his hardship request would be considered anew.

In 2004, Mr. McCarty filed this action against Derivium, Wachovia, and the AAA. Mr. McCarty claims that the AAA: (1) refused to hold the arbitration in New York, rather than South Carolina, which Mr. McCarty says he could not get to because of a disability; (2) refused to grant him an exemption from arbitration fees; and (3) generally delayed the processing of his claim. While the precise nature of Mr. McCarty's legal claims against the AAA is not certain, it appears that he asserts that the aforesaid actions of the AAA violated his rights under the Fifth and Fourteenth Amendments to the Constitution and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. He asks the Court to fine the AAA and award him punitive damages of $25,000. *See* Complaint [doc. # 2]. The AAA has now moved to dismiss Mr. McCarty's claims under Rule 12(b)(6) of the *Federal Rules of Civil Procedure* because the AAA is immune from such claims under the doctrine of arbitral immunity. *See* Defendant American Arbitration Association's Motion to Dismiss [doc. # 52].

Having considered all of the submissions of both parties, the Court agrees with the AAA that it is immune from any damage claims arising out of its handling of Mr. McCarty's arbitration. Arbitral immunity against damages suits is well established in the Second Circuit and elsewhere *See. e.g. Int'l Medical Group, Inc. v. American Arbitration Assoc., Inc.,* 312 F.3d 833 842-44 (7th Cir.2002) (holding the AAA immune from suit for wrongfully exercising jurisdiction over a party that had not agreed to arbitration); *Olson v. National Ass'n of Securitites Dealers,* 85 F.3d 381, 382 (8th Cir.1996) ( "[A]rbitral immunity extends beyond arbitrators themselves to organizations that sponsor arbitrations."); *Austern v. Chicago Board of Options Exchange, Inc.,* 898 F.2d 882, 885-87 (2d Cir.1990) (holding that arbitrators are absolutely immune "from civil liability for all acts performed in their arbitral capacity").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2

Slip Copy, 2005 WL 3320564 (D.Conn.)
**(Cite as: Slip Copy)**

In *Austern,* as here, plaintiffs sued a commercial organization sponsoring a contractually agreed-upon arbitration for damages arising from the organization's conduct in connection with the arbitration. The Second Circuit noted at the outset that courts had long held, by analogy to absolute judicial immunity, that arbitrators themselves were absolutely immune from liability in damages for all acts within the scope of the arbitral process. According to the Court, that same immunity also should shield the arbitration-sponsoring organization "for all functions that are integrally related to the arbitral process." *Austern,* 898 F.2d at 886. For as the Second Circuit explained:

**\*2** [E]xtension of arbitral immunity to encompass boards [that] sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illus [ory]. It would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring association.

*Id.* (alterations in original) (quoting *Corey v. New York Stock Exchange,* 691 F.2d 1205, 1211 (6th Cir.1982)).

Moreover, the Second Circuit refused to draw a distinction between the sponsoring organization's administrative and decision-making functions: " [S]emantically categorizing the challenged acts as ' ministerial' or administrative, as opposed to ' discretionary,' in large part misses the mark, since the scope of arbitral immunity is defined by the *functions* it protects and serves." *Austern,* 898 F.2d at 886 (internal quotation marks omitted). The Court went on to hold that the sponsoring organization was immune for its allegedly defective notice and improper selection of the arbitration panel, because these actions were "performed directly in connection with the [organization's] management of contractually agreed upon arbitration " and "were sufficiently associated with the adjudicative phase of the arbitration to justify immunity." *Id.; see also Yadav v. New York Stock Exchange, Inc,* No. 91 Civ. 2256, 1992 WL 197409, at \*3 (S.D.N.Y. Aug.4, 1992) (holding the NYSE immune from suit for its unnecessary delay in sending plaintiff an arbitration award and poorly advising him about an appeal).

In this case, the decisions by the AAA that form the basis of Mr. McCarty's claims occurred in connection with the AAA's management of the contractually agreed-upon arbitration between Mr. McCarty and Derivium. Because the AAA's conduct was "integrally related to the arbitral process," *Austern,* 898 F.2d at 886, the AAA is absolutely immune from liability on Mr. McCarty's claims. *See, e.g., Republic of Ecuador & Petroecuador v. Chevrontexaco Corp.,* No. 04 Civ. 8378, 2004 WL 2813510, at \*1 (Dec. 7, 2004) ("The immunity of an arbitration association from suit where its sole role is that of a neutral party whose arbitration services have been invoked by one party and where it is not a necessary party has been well established." ) (granting immunity to the AAA). That Mr. McCarty asserts constitutional and statutory violations by the AAA makes no difference. *See, e.g., Hudson v. American Arbitration Association, Inc.,* 101 Fed. Appx. 947, 947 (5th Cir. June 17, 2004) (holding that "[a]ny equal protection claims or claims of misdeeds by the [AAA] are barred by arbitral immunity"); *Austern,* 898 F.2d at 885 (holding an arbitral organization immune from claims that the organization violated plaintiffs' rights under the Fourteenth Amendment and the Illinois Constitution). *Cf. Haas v. Quest Recovery Serv., Inc.,* 338 F.Supp.2d 797, 805 (N.D.Ohio 2004) (finding a judge entitled to absolute judicial immunity from ADA claims based upon his conduct in sentencing); *Roe v. Johnson,* 334 F.Supp.2d 415, 423-24 (S.D.N.Y.2004) (holding that absolute judicial immunity shields members of a character and fitness committee from ADA claims)

**\*3** Therefore, the Court GRANTS the AAA's Motion to Dismiss [doc. # 52]. The Court notes that since Mr. McCarty's claims against Defendants AAA and Derivium have been dismissed, *see* Notice of E-Filed Order [doc. # 47] (granting Mr. McCarty's motion to dismiss Derivium), only his claims against Defendant Wachovia remain. The Court orders both parties to file a report by December 5 detailing the status of Mr. McCarty's claims against Wachovia Bank, NA
IT IS SO ORDERED,

D.Conn.,2005.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy    Page 3
Slip Copy, 2005 WL 3320564 (D.Conn.)
**(Cite as: Slip Copy)**

McCarty v. Derivium Capital, LLC
Slip Copy, 2005 WL 3320564 (D.Conn.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                                           Page 1

Slip Copy, 2005 WL 2334297 (E.D.Tenn.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Tennessee,
Northern Division.
Jimmie D. ROSS, Plaintiff,
v.
MBNA BANK, et al., Defendants.
**No. 3:04-CV-607.**

Sept. 23, 2005.

Jimmie D. Ross, Sevierville, TN, pro se.
Timothy L. Edington, Ron E. Cunningham, Finkelstein, Kern, Steinberg & Cunningham, Dean B. Farmer, Hodges, Doughty & Carson, Knoxville, TN, Heather C. Ross, Office of the Attorney General, Nashville, TN, for Defendants.

*MEMORANDUM OPINION*
VARLAN, J.
*1 This civil action is before the Court on motions to dismiss filed by: (1) defendant Chancellor Forgety [Doc. 34]; (2) defendants Johnson, Soltis, Kalina, Fredrickson, and National Arbitration Forum [Doc. 39]; (3) defendant Edington [Doc. 47]; (4) defendant Cunningham [Doc. 49]; (5) defendant Finkelstein, Kern, Steinberg & Cunningham [Doc. 51]; and (6) defendants MBNA Bank, Abramson, Munoz, and Wolpoff & Abramson [Doc 53].

I. Relevant Facts

Plaintiff filed his complaint *pro se* on December 23, 2004, alleging violations of 18 U.S.C. §§ 1961 and 1962 ("RICO") against the above-named defendants and as well as defendant Brandt, who has not filed a motion to dismiss. Specifically, plaintiff alleges defendants engaged in a "debt collection fraud racket" whereby defendants conspired to "fraudulently claim[ ] [plaintiff] was indebted to MBNA Bank in a sum in excess of thirty thousand dollars." Plaintiff describes the purported debt as "worthless commercial paper" and "a fraudulent security instrument" and refers to various defendants as "artists." Thus, it seems the core issue of plaintiff's claims is his contention that the debt is not valid.

According to plaintiff's complaint, the "scam" apparently culminated on October 26, 2004, when defendants Edington and Finkelstein, Kern, Steinberg & Cunningham, obtained a judgment order on behalf of defendant MBNA that was signed by defendant Chancellor Forgety in the amount of $30,508.30. Plaintiff describes the entry of that judgment order as an "episode of mischief," in which defendant Chancellor Forgety gave defendant Edington a "sworn agreement to aide and abet in the defrauding" of plaintiff. The Court construes plaintiff's description of defendant Chancellor Forgety's "sworn agreement" as the judgment order entered against plaintiff. In his motion to dismiss, defendant Chancellor Forgety, also construing plaintiff's description as a reference to the judgment order, provides a copy of that judgment order and asks that it be incorporated into the record. [*See* Doc. 34-2].

The judgment order indicates that a motion for summary judgment was granted in favor of defendant MBNA, ordering plaintiff to pay $30,508.30 with post judgment interest. The order notes that plaintiff failed to file any formal responsive pleadings and was not present to oppose the motion.

II. Analysis

Defendants move for dismissal based on several grounds, including Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim for which relief can be granted. At this early stage of the proceedings, the Court must construe all

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 2

Slip Copy, 2005 WL 2334297 (E.D.Tenn.)
**(Cite as: Slip Copy)**

well-pled allegations of the complaint to be true. *Hahn v. Star Bank,* 190 F.3d 708, 718 (6th Cir.1999). Pleadings by *pro se* litigants are entitled to particularly liberal construction. *Id.* at 715. " This less stringent standard, however, does not mean that *pro se* plaintiffs are entitled to take every case to trial" on the basis of futile claims. *Id.*

*2 Ordinarily, if a court considered "matters outside the pleading" in resolving a Rule 12(b)(6) motion, the motion is converted to one for summary judgment under Rule 56. See Fed.R.Civ.P. 12(b). As a result, the burden is placed on the movant to demonstrate that there is no genuine issue of disputed material fact. See Fed.R.Civ.P. 56(c). There are exceptions to this general rule, however. Documents attached to a motion to dismiss are considered part of the pleadings if they are: (1) central to plaintiff's claim; and (2) referred to in plaintiff's complaint. *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir.1997).

Although the present complaint is somewhat difficult to decipher, what is clear is that plaintiff alleges that defendant MBNA, acting through defendants Abramson, Munoz, Wolpoff & Abramson, Edington, Cunningham, and Finkelstein, Kern, Steinberg & Cunningham, and others, attempted to collect a "fraudulent" debt. It is apparent from the record that Chancellor Forgety's October 26, 2004, judgment order relates to the same conduct plaintiff claims was fraudulent. Because it is referenced in, and central to, plaintiff's claim, the Court can accordingly consider the Chancery Court judgment order in resolving defendants' motions under Rule 12(b)(6).FN1

> FN1. Alternatively, the Court may consider the Chancery Court record under the "public records" exception. *See Neiman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997).

A. *Defendant Chancellor Forgety*

It is well-settled that, with limited exceptions, judges are immune from suit for money damages. *Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). A litigant cannot sidestep a judicial officer's immunity by alleging bad faith, malice, corruption, bribery, or conspiracy. *Id.* at 288; *Eldridge v. Gibson,* 332 F.3d 1019, 1021 (6th Cir.2003). Instead,

immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Mireles,* 502 U.S. at 11-12 (citations omitted).

Although plaintiff alleges that Chancellor Forgety entered the underlying judgment order in an attempt to further some alleged fraud, such allegation does not transform the judge's action into "nonjudicial" conduct, even if true. "[T]he relevant inquiry is the nature and function of the act, not the act itself. In other words, we look to the particular act's relation to a general function normally performed by a judge. ..." *Id.* at 13 (citations and quotations omitted). In the present case, the conduct of which plaintiff complains-the adjudication of a debt collection suit and the entry of an order-relate to "a general function normally performed by a judge," regardless of the alleged motivation. *Id.* at 11-13.

Plaintiff is not able to meet the second exception to judicial immunity either. The Court simply cannot conclude that a chancellor acts "in the complete absence of all jurisdiction" by adjudicating a debt collection suit.

*3 Therefore, defendant Chancellor Forgety retains judicial immunity. Accordingly, defendant Chancellor Forgety's motion to dismiss [Doc. 34] will be granted. Defendant Chancellor Forgety will be dismissed from this civil action.

B. *Defendants Johnson, Soltis, Kalina, Fredrickson, and National Arbitration Forum*

The doctrine of judicial immunity also extends to quasi-judicial roles that are " 'functionally comparable' to that of a judge." *Butz v. Economu,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 3

Slip Copy, 2005 WL 2334297 (E.D.Tenn.)
**(Cite as: Slip Copy)**

438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (quotation omitted); *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Amer., et al. v. Greyhound Lines, Inc.,* 701 F.2d 1181, 1185 (6th Cir.1983). The Sixth Circuit recognizes that the function of an arbitrator is quasi-judicial in nature and, thus, falls under the umbrella of judicial immunity. *See Greyhound Lines, Inc.,* 701 F.2d at 1185. This immunity covers both the arbitrators personally and the boards that sponsor arbitration. *See Corey v. New York Stock Exchange,* 691 F.2d 1205, 1209 (6th Cir.1982).

In the present case, plaintiff never directly stated allegations against defendants National Arbitration Forum, Johnson, Soltis, Kalina, and Fredrickson. Construing the complaint liberally, however, plaintiff seems to include these defendants in the alleged conspiracy. The only involvement by these defendants that the Court can discern from the complaint is in their role as arbitrators who adjudicated a debt collection arbitration. Thus, these defendants were acting in a quasi-judicial role.

Therefore, defendants Johnson, Soltis, Kalina, Fredrickson, and National Arbitration Forum are entitled to arbitral immunity, and plaintiff has failed to allege any facts that would deny these defendants that immunity. Accordingly, the motion to dismiss filed by defendants Johnson, Soltis, Kalina, Fredrickson, and National Arbitration Forum [Doc. 39] will be granted. Defendants Johnson, Soltis, Kalina, Fredrickson, and National Arbitration Forum will be dismissed as parties to this civil action.

*C. Defendants Edington; Cunningham; Finkelstein, Kern, Steinberg & Cunningham, MBNA Bank; Abramson; Munoz, and Wolpoff & Abramson*

After reviewing the October 26, 2004, Chancery Court judgment it is clear that plaintiff's complaint against defendants Edington; Cunningham; Finkelstein, Kern, Steinberg & Cunningham; MBNA Bank; Abramson; Munoz; and Wolpoff & Abramson must be dismissed under the doctrine of collateral estoppel, which bars a second suit between the same parties or their privies as to issues which were actually litigated and determined. *See Massengill v. Scott,* 738 S.W.2d 629, 632 (Tenn.1987) (citation omitted). In determining the preclusive effect of the underlying Chancery Court judgment, this Court must first look to Tennessee's state law of preclusion. *See Marrese v. Amer. Acad. of Orthopedic Surgeons,* 470 U.S. 373, 381, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). If Tennessee courts would accord the judgment preclusive effect, then this Court must do likewise unless Congress has expressly or impliedly created an applicable exception to this rule. *See id.; Bay Area Factors v. Calvert (In re Calvert),* 105 F.3d 315, 317 (6th Cir.1997). No such exception applies to the present case.

*4 Tennessee courts apply the doctrine of equitable estoppel to issues which were actually litigated and determined in a former suit between the same parties or their privies if the issues were necessary to the judgment in that suit. *See Massengill,* 738 S.W.2d at 632. The Chancery Court litigation was a suit between plaintiff and MBNA, a defendant in the present action and represented by defendants Edington, Cunningham, and Finkelstein, Kern, Steinberg & Cunningham. It seems that defendants Abramson, Munoz and Wolpoff & Abramson also represented defendant MBNA at an earlier point during the same debt collection action. At the core of the Chancery Court litigation was the same debt that is the subject of this suit. As the October 26, 2004, judgment and order demonstrates, although plaintiff failed to appear or oppose the motion for summary judgment, the issue was well-pleaded, properly raised, and, thus, "actually litigated" in that case. *See Rally Hill Prods. v. Bursack (In re Bursack),* 65 F.3d 51, 54 (6th Cir.1995). Finally, the Court finds that the resolution of the validity of the $30,508.30 was "necessary to the judgment" in Chancery Court, as that litigation resulted in a judgment order in favor of defendant MBNA.

Plaintiff could have raised his civil RICO claims in state court. *See Tafflin v. Levitt,* 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). More precisely, plaintiff could have raised his allegations in Sevier County Chancery Court when the legitimacy of the debt was first litigated. *See Tennessee ex rel. Pierotti v. 777 N. White Station Road, Memphis,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                           Page 4

Slip Copy, 2005 WL 2334297 (E.D.Tenn.)
**(Cite as: Slip Copy)**

*Tenn.,* 937 F.Supp. 1296 (W.D.Tenn.1996). The Chancery Court ruling granting summary judgment against plaintiff collaterally estops plaintiff from now challenging the validity of MBNA's claims. We "have a system of law which expects, and in fact demands, that individuals sued respond to the suit and which subjects to liability those who do not." *See Calvert,* 105 F.3d at 321.

Therefore, plaintiff is estopped from challenging the purported "fraudulent security instrument" claim upon which the RICO complaint is based. Accordingly, the motions to dismiss filed by defendants Edington; Cunningham; Finkelstein, Kern, Steinberg & Cunningham; MBNA Bank; Abramson; Munoz; and Wolpoff & Abramson [Docs. 47, 49, 51, 53] will be granted. Defendants Edington; Cunningham; Finkelstein, Kern, Steinberg & Cunningham; MBNA Bank; Abramson; Munoz; and Wolpoff & Abramson will be dismissed as parties to this civil action.

### III. Conclusion

In summary, for the reasons set out above, the following defendants will be dismissed as parties to this civil action: (1) defendant Chancellor Forgery; (2) defendants Johnson, Soltis, Kalina, Fredrickson, and National Arbitration Forum; (3) defendant Edington; (4) defendant Cunningham; (5) defendant Finkelstein, Kern, Steinberg & Cunningham; and (6) defendants MBNA Bank, Abramson, Munoz, and Wolpoff & Abramson.

ORDER ACCORDINGLY.

E.D.Tenn.,2005.
Ross v. MBNA Bank
Slip Copy, 2005 WL 2334297 (E.D.Tenn.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 3123108 (Trial Pleading) Petition, Complaint, and Claim Under Authority of 18 USC 1964(a) Subject Matter Jurisdictional Statement (Dec. 23, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Kelly M. Dawson, hereby certify that on this 19th day of June, 2006, I caused a copy of the foregoing **Defendant National Arbitration Forum's Reply Brief in Support of Its Motion to Dismiss Complaint** to be served upon the following individual via United States First Class Mail:

Herman Kelly
Post Office Box 14157
Detroit, Michigan 48214

                                              /s/ Kelly M. Dawson
                                              Kelly M. Dawson (No. 4786)

628114v1