IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

Herman Kelly,

                    Plaintiff,

          v.                                        C.A. No. 06-228-JJF

MBNA America Bank, National Arbitration
Forum, Wolpoff & Abramson, L.L.P.

                    Defendants.

## AFFIDAVIT OF ROBERT WINZINGER IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

STATE OF DELAWARE          )
                           ) ss.:
COUNTY OF NEW CASTLE       )

Robert Winzinger, being duly sworn, deposes and says:

1.      I am an Assistant Vice President at Bank of America Corporation, which is the parent corporation of Defendant FIA Card Services, National Association, formerly known as MBNA America Bank, N.A. ("MBNA"). I submit this affidavit in support of MBNA's opposition to Plaintiff's Motion to Amend. In preparing this affidavit, I have relied on my own knowledge, as well as information contained in MBNA's records.

2.      Plaintiff Herman Kelly is the holder of a credit card ending in 8145 issued by MBNA. A true and correct copy of the current Credit Card Agreement governing his account is attached hereto as Exhibit 1.[1] The original Credit Card Agreement governing his account is

---

[1] One copy shows the layout of the Credit Card Agreement as it would have been printed on a larger piece of paper, which was then folded and inserted into Mr. Kelly's August 2006 statement, along with the Supplement to the Notice of Change in Terms. The other copy is an enlargement included for ease of reading.

（空欄）

attached hereto as Exhibit 2. Mr. Kelly's Credit Card Agreement has always contained an

arbitration provision. *See* Exhibit 1, ¶ 48; Exhibit 2, ¶ 7.19.

     3.    Pursuant to paragraph 48 of the Credit Card Agreement, MBNA elects to

resolve by arbitration any claim or dispute that Mr. Kelly may assert "arising from or relating in

any way to this Agreement or any prior Agreement or [his] account" ending in 8145.

ROBERT WINZINGER

Sworn to before me this
31st day of October, 2007

Notary Public

**VANESSA A. BRADLEY**
**NOTARY PUBLIC**
**STATE OF DELAWARE**
My Commission Expires Jan. 20, 2010

# EXHIBIT 1



**Your Rights and Our Responsibilities After We Receive Your Written Notice:** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we did not make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within twenty-five (25) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill, and we must tell you the name of anyone we report you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of the property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(1) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(2) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

F01-C1125

Bank of America, N.A. (USA)
© 2006 Bank of America

**Bank of America**

**IMPORTANT NOTICE OF CHANGE IN TERMS**

Bank of America Corporation and MBNA Corporation are pleased to announce our merger. In bringing the organizations together, we are creating a credit card bank that will provide our customers with a greater range of financial solutions than ever before. We are consolidating our credit card program into one bank: FIA Card Services, N.A. As a result, beginning October 19, 2006 (the "Effective Date"), your Bank of America credit card account will be issued and administered by FIA Card Services, N.A. This document, together with the Supplement To The Notice Of Change in Terms on the enclosed statement, is your new "Credit Card Agreement" and replaces in whole, on the Effective Date, your existing Cardholder Agreement and will apply to all new and outstanding balances. Please read these documents carefully and retain them for your records.

Except for Section 12 and Section 13, all of the changes below will apply to your account as of the first day of your billing cycle that includes the Effective Date. Sections 12 and 13 will apply to your account as of the Effective Date.

As a part of the transition, we will be restructuring your account balances into four balance categories (as newly defined by your Credit Card Agreement): Category A, for Check Cash Advances and Balance Transfers; Category B, for Bank and ATM Cash Advances; Category C for Purchases; and Category D for Other Balances. In some cases we will consolidate existing balances into a single balance category. When we do so, we will honor, or lower, the existing Annual Percentage Rates, including any existing promotional rates or default rates that may be available on this account.

**CREDIT CARD AGREEMENT**

We reserve the right to change the terms of this Agreement at any time, as further described in the following sections: Balance Categories and We May Amend This Agreement.

**1. YOUR CONTRACT WITH US**
Your Agreement with us consists of this Credit Card Agreement and any changes we make to it from time to time. The terms of this Agreement apply to you if any of you applied for and were granted an account, used the account, maintained the account, and/or otherwise accepted the account. You agree to the terms and conditions of this Agreement.

F01-C1125

Bank of America, N.A. (USA)
© 2006 Bank of America

F01-C1125   6/29/06   8:47 AM   Page 2

## 2. WORDS USED OFTEN IN THIS AGREEMENT

"Access check" means an access check we provide to you to make a Check Cash Advance on your account.

"Agreement" or "Credit Card Agreement" means this document and any changes we make to this document from time to time.

"APR" means the corresponding Annual Percentage Rate. The APR corresponds to the Daily Periodic Rate ("DPR") which is calculated by dividing the corresponding APR by 365.

"Card" means all the credit cards we issue to you and to any other person with authorization for use on this account pursuant to this Agreement.

"Cash Advance" means the use of your account for a loan obtained:

(1) at an automated teller machine ("ATM Cash Advance");

(2) by a transfer of funds initiated by us at your request ("Balance Transfer");

(3) at any financial institution (e.g., to obtain cash, money orders, or travelers checks), including overdraft transactions if this account is eligible for and properly enrolled in an overdraft protection program, at any non-financial institution (to obtain cash), or for any payment you make to us that is returned to us unpaid for any reason, including the related finance charges ("Bank Cash Advance");

(4) by an access check you sign as drawer ("Check Cash Advance").

"Cash Advance" includes Transaction Fees and adjustments associated with any Cash Advance.

"Default Rate" means the APR which may be applied without further notice to your account in certain instances of your default, as described in the section titled, Default Pricing.

"Foreign Transaction" means any transaction made in a foreign currency (including, for example, online purchases from foreign merchants).

"Grace Period" means the period of time during a billing cycle when you will not accrue Periodic Rate Finance Charges on certain transactions or balances.

"New Balance Total" means the total billed amount as of the Closing Date of a billing cycle, as shown on your monthly statement. To determine the New Balance Total, we start with the total balance at the beginning of the billing cycle, which is the "Previous Balance." Then we subtract payments and credits. Then we add Cash Advances, Purchases and Finance Charges.

"Pay in Full" or "Paid in Full" means payments and credits in a billing cycle totaling at least your previous billing cycle's New Balance Total. In general, Pay in Full must be made by the Payment Due Date in order to get a Grace Period.

"Promotional Rate" means a temporary APR that may be offered on a balance category for a designated time period, and may be subject to other conditions.

"Purchase" means the use of your card or account number to:

(1) buy or lease goods or services;

(2) buy "Cash Equivalents" (i.e. foreign currency, money orders or travelers checks from a non-financial institution, or wire transfers, out-of-network bill payments made through FIACS's online bill payment service, person to person money transfers, bets, lottery tickets, or casino gaming chips) from any seller other than a financial institution; and

(3) make a transaction that is not otherwise a Cash Advance.

"Purchase" includes Account Fees, as well as Transaction Fees and adjustments associated with any Purchase.

"We," "us," "our," and "FIACS" mean FIA Card Services, N.A., also known as Bank of America.

"You" and "your" mean each and all of the persons who are granted, accept or use an account we hold. "You" and "your" also mean any other person who has guaranteed payment of this account, when used in the sections titled, Your Contact With Us, We May Monitor and Record Telephone Calls, and Arbitration and Litigation, and when used in each of the sections relating to payment of this account (e.g., Your Promise to Pay, and How We Allocate Your Payments).

We will use the definitions described under the section heading Words Used Often in This Agreement or as otherwise defined in this Agreement. If we use a capitalized term in this document but we do not define the term in this document, the term has the meaning as used in your monthly statement.

We use section headings (e.g., Words Used Often in This Agreement) to organize this Agreement. The headings are for reference purposes only.

## 3. BALANCE CATEGORIES

When a Cash Advance or Purchase transaction occurs, we add the amount of the transaction and any associated finance charges, to one of the following balance categories:

Category A - Balance Transfers and Check Cash Advances

Category B - ATM Cash Advances and Bank Cash Advances

Category C - Purchases

Category D - Other Balances

From time to time, we may move certain balances from one category to another (for example, so we can accommodate promotional terms), and we will tell you when we do.

Each balance category has its own APR. All rates are subject to change. In addition to the Annual Percentage Rate section, please see how we may change the rates on your account in the section titled, We May Amend This Agreement.



**4. ANNUAL PERCENTAGE RATES**
See Supplement To The Notice Of Change In Terms on the enclosed statement.

**5. DEFAULT PRICING**
See Supplement To The Notice Of Change In Terms on the enclosed statement.

**6. CALCULATION OF PERIODIC RATE FINANCE CHARGES**
We calculate Periodic Rate Finance Charges for each balance category by multiplying its Balance Subject to Finance Charge by the applicable DPR and that result by the number of days in the billing cycle.

**7. BILLING CYCLE**
Your billing cycle ends each month on a Closing Date determined by us. Each billing cycle begins on the day after the Closing Date of the previous billing cycle. Each monthly statement reflects a single billing cycle.

**8. WHEN PERIODIC RATE FINANCE CHARGES BEGIN TO ACCRUE**
Each new Category A and Category B Cash Advance begins to accrue Periodic Rate Finance Charges on its transaction date. Category A and Category B balances remaining from previous billing cycles accrue Periodic Rate Finance Charges from the first day of the billing cycle. The transaction date for Check Cash Advances and Balance Transfers made by check is the date the check is first deposited or cashed. The transaction date for a returned payment (a Bank Cash Advance) is the date that the corresponding payment posted to your account.

Unless subject to a Grace Period, each new Category C Purchase and each new Category D Other Balance begins to accrue Periodic Rate Finance Charges on its transaction date or the first day of the billing cycle, whichever date is later. Unless subject to a Grace Period, Category C balances and Category D balances remaining from previous billing cycles accrue Periodic Rate Finance Charges from the first day of the billing cycle.

When applicable, Periodic Rate Finance Charges accrue daily and compound daily on new balances, and balances remaining from previous billing cycles, in each balance category. Periodic Rate Finance Charges will continue to accrue even though you have paid the full amount of any related balances in a balance category because we include any accrued but unpaid finance charges in the calculation of the Balance Subject to Finance Charge.

Your Payment Due Date will be at least 20 days from your statement Closing Date.

**9. GRACE PERIOD**
See Supplement To The Notice Of Change In Terms on the enclosed statement for complete terms.

**10. CALCULATION OF BALANCES SUBJECT TO FINANCE CHARGE**
Categories A and B — Average Balance Method (Including new Cash Advances)
We calculate separate Balances Subject to Finance Charge for Category A balances and Category B balances. We calculate the Balance Subject to Finance Charge for each of these balance categories by: (1) calculating a daily balance for each day in the current billing cycle; (2) calculating a daily balance for each day prior to the current billing cycle that had a "Pre-Cycle Cash Advance" balance (a Pre-Cycle Cash Advance is a Cash Advance with a transaction date prior to the current billing cycle but with a posting date within the current billing cycle); (3) adding all the daily balances together; and (4) dividing the sum of the daily balances by the number of days in the current billing cycle.

To calculate the daily balance for each day in the current billing cycle, we take the beginning balance, add an amount equal to the applicable Daily Periodic Rate multiplied by the previous day's daily balance, add new Cash Advances and Transaction Fees, and subtract applicable payments and credits. If any daily balance is less than zero we treat it as zero.

To calculate a daily balance for each day prior to the current billing cycle that had a Pre-Cycle Cash Advance balance, we take the beginning balance attributable solely to Pre-Cycle Cash Advances (which will be zero on the transaction date of the first Pre-Cycle Cash Advance), add an amount equal to the applicable Daily Periodic Rate multiplied by the previous day's daily balance, and add only the applicable Pre-Cycle Cash Advances, and their related Transaction Fees. We exclude from this calculation all transactions posted in previous billing cycles.

Categories C and D — Average Daily Balance Method (Including new transactions)

See Supplement To The Notice Of Change In Terms on the enclosed statement for complete terms.

**11. MINIMUM FINANCE CHARGE**
See Supplement To The Notice Of Change In Terms on the enclosed statement for complete terms.

**12. TRANSACTION FEE FINANCE CHARGES**
See Supplement To The Notice Of Change In Terms on the enclosed statement for complete terms.

**13. ACCOUNT FEES**
See Supplement To The Notice Of Change In Terms on the enclosed statement for a complete list of fees.

**14. OVERDRAFT PROTECTION**
If your checking account with Bank of America is linked to this account, this overdraft protection feature will allow funds to be transferred ("overdraft protection transfers") from this account into your designated checking account with Bank of America

("checking account") when transactions occur on your checking account, such as checks or other debits, that if paid would cause the checking account to be overdrawn ("overdraft transactions"). Overdraft protection transfers include automatic transfers to cover checking account fees. Overdraft protection transfers are processed after close of business Monday through Friday and are treated as Category B Cash Advances. Each day's overdraft transactions will be totaled and rounded to the next $100 ($25 if you opened your checking account in Washington or Idaho) increment up to your available credit limit, regardless of who initiated the overdraft transactions. For example, if your checking account has a balance of $1.00 and a check or other debit item for $125 is presented for payment, which if paid would cause your checking account to be overdrawn, an overdraft protection transfer of $200 will be made to your checking account and a Bank Cash Advance of $200 will post to this account. The amount of available credit on this account must be sufficient to cover the total amount of overdraft transactions (received by Bank of America that day) rounded to the next $100 increment (but excluding any overdraft protection fee); otherwise one or more of the overdraft transactions for that day will be rejected. However, if the available credit on this account is greater than the overdraft transaction amount, but the available credit is insufficient for the overdraft transaction amount to be rounded to the next $100 increment, then the amount of the overdraft transaction will be rounded to the highest whole dollar amount of your available credit. (And in such an event, the accrued finance charges may result in an Overlimit Fee.) We may permit or refuse to permit any overdraft protection transfer that would cause you to exceed the credit limit on this account; but if we permit it, you may be assessed an Overlimit Fee during the billing cycle in which the transfer occurs. This overdraft protection feature will automatically be cancelled if this account is closed by either you or us, or at any time upon your request. Your overdraft transactions remain subject to the terms of your checking account with Bank of America, any related enrollment agreement, and this Agreement.

**15. SIGN YOUR CARD**
You should sign your card before you use it.

**16. HOW TO USE YOUR ACCOUNT**
You may obtain credit in the form of Purchases and Cash Advances by using cards, access checks, your account number, or other credit devices.

**17. WE MAY MONITOR AND RECORD TELEPHONE CALLS**
You consent to and authorize FIACS, any of its affiliates, or its marketing associates to monitor and/or record any of your telephone conversations with our representatives or the representatives of any of those companies. Where you have provided a cell phone number directly to us, or placed a cell phone call to us, you consent and agree to accept collection calls to your cell phone from us. For any telephone or cell phone calls we place to you, you consent and agree that

those calls may be automatically dialed and/or use recorded messages.

**18. CREDIT REPORTING AGENCIES; COLLECTING AND SHARING INFORMATION**
You authorize us to collect information about you in order to conduct our business and deliver the top quality service you expect, including information we receive about you. Information we receive from third parties such as credit reporting agencies and information about your transactions with us and other companies. You authorize us to share such information about you or your account with our affiliates and others. You may have the right to opt out of some information sharing. For more details, please refer to our Privacy Policy.

If you believe we have furnished inaccurate or incomplete information about you or your account to a credit reporting agency, write to us at: FIA Card Services, N.A. Credit Reporting Agencies, P.O. Box 17054, Wilmington, DE 19884-7054. Please include your name, address, home phone number, and account number, and explain what you believe is inaccurate or incomplete.

**19. PURPOSES FOR USING YOUR ACCOUNT**
You may use your account for personal, family, or household purposes. You may not use your account for business or commercial purposes. You may not use a Check Cash Advance, or any other Cash Advance, to make a payment on this or any other account with us or our affiliates. You may not use or permit your account to be used to make any illegal transaction. You will only use your account for transactions that are legal where you conduct them. For example, Internet gambling transactions may be illegal in your state. Display of a payment card logo by an online merchant does not mean that an Internet transaction is legal where you conduct it. We may charge your account for such transactions. We will not be liable if you engage in an illegal transaction. We may deny authorization of any transactions identified as Internet gambling.

**20. PERSONS USING YOUR ACCOUNT**
If you permit any person to use your card, access checks, account number, or other credit device with the authorization to obtain credit on your account, you may be liable for all transactions made by that person including transactions for which you may not have intended to be liable, even if the amount of those transactions causes your credit limit to be exceeded. Authorized users of the account may have the same access to information about the account and its users as the account holders. We may send account materials (cards, statements and notices) to any liable party, and that person will be responsible for delivering those materials to the other liable parties and authorized users. Notice to any of you will be considered notice to all of you. You may allow authorized users on your account in the following ways: (1) by notifying us that you want someone added to your account as an authorized user; (2) by lending your card or account number to another; or

(3) by any other ways in which you would be legally considered to have allowed another to use your account or to be legally prevented from denying that you did so. You must think carefully before you allow anyone to become an authorized user. By doing so, you authorize the person to use your account to the same extent you can, including but not limited to making any purchases, cash advances, balance transfers and allowing others to use your account. Your account does not permit you to limit the nature or amount of authority you give to any authorized user and you will not attempt to do so. An authorized user's authority will continue until you both notify us that you are terminating the authority and you physically retrieve the card. If you cannot retrieve the card, you will remain liable for any transactions that we cannot prevent after you notify us.

## 21. YOUR PROMISE TO PAY

You promise to pay us the amounts of all credit you obtain, which includes all Purchases and Cash Advances. You also promise to pay us all the amounts of finance charges, fees, and any other transactions we charge to your account. If a bank branch or office sponsors your account, you promise to pay it any unpaid account balance it pays us within 30 days.

## 22. PAYMENTS ON YOUR ACCOUNT

You must pay each month at least the Total Minimum Payment Due shown on your monthly statement by its Payment Due Date. Your Payment Due Date may vary from month to month. Payments must conform to the requirements set out on that monthly statement; these requirements may vary without prior notice. You may pay the entire amount you owe us at any time. Payments made in any billing cycle that are greater than the Total Minimum Payment Due will not affect your obligation to make the next Total Minimum Payment Due. If you overpay or if there is a credit balance on your account, we will not pay interest on such amounts. We will reject payments that are not drawn in U.S. dollars and those drawn on a financial institution located outside of the United States. We reserve the right to reject any payment if your account has a credit balance as of the day we receive that payment. Payment of your Total Minimum Payment Due may not avoid the assessment of Overlimit Fees. Generally, credits to your account, such as those generated by merchants or by person-to-person money transfers, are not treated as payments and will not reduce your Total Minimum Payment Due.

See Supplement To The Notice Of Change In Terms on the enclosed statement for additional terms.

## 23. TOTAL MINIMUM PAYMENT DUE

You may pay your total outstanding balance at any time. Each billing cycle, you must pay at least the Total Minimum Payment Due shown on your monthly statement by its Payment Due Date. The Total Minimum Payment Due is the sum of all past due amounts plus the Current Payment.

See Supplement To The Notice Of Change In Terms on the enclosed statement for additional terms.

## 24. WHEN YOUR PAYMENT WILL BE CREDITED TO YOUR ACCOUNT

We credit your payments as of the date received, if the payment is (1) received by 5 p.m. (Eastern Time); (2) received at the address shown in the upper left-hand corner of the front of your monthly statement; (3) paid with a check drawn in U.S. dollars on a U.S. financial institution or a U.S. dollar money order; and (4) sent in the return envelope with only the top portion of your statement accompanying it. Payments received after 5 p.m. on any day including the Payment Due Date, but that otherwise meet the above requirements, will be credited as of the next day. Credit for any other payments may be delayed up to five days.

## 25. HOW WE ALLOCATE YOUR PAYMENTS

We will allocate your payments in the manner we determine. In most instances, we will allocate your payments to balances (including transactions made after your latest statement) with lower APRs before balances with higher APRs. This will result in balances with lower APRs (such as new balances with promotional APR offers) being paid before any other existing balances.

## 26. PROMISE TO PAY APPLIES TO ALL PERSONS

All persons who initially or subsequently request, accept, guarantee or use the account are individually and together responsible for any total outstanding balance. If you and one or more persons are responsible to pay any total outstanding balance, we may refuse to release any of you from liability until all of the cards, access checks, and other credit devices outstanding under the account have been returned to us and you repay us the total outstanding balance owed to us at any time under the terms of this Agreement.

## 27. DEFAULT

You will be in default of this Agreement if: (1) you fail to make any required Total Minimum Payment Due by its Payment Due Date; (2) your total outstanding balance exceeds your credit limit; or (3) you fail to abide by any other term of this Agreement. Our failure to exercise any of our rights when you default does not mean that we are unable to exercise those rights upon later default.

## 28. WHEN WE MAY REQUIRE IMMEDIATE PAYMENT

If you are in default, then in addition to our other remedies under this Agreement, we can require immediate payment of your total outstanding balance and, unless prohibited by applicable law and except as otherwise provided under the Arbitration and Litigation section of this Agreement, we can also require you to pay the costs we incur in any collection proceeding, as well as reasonable attorneys' fees if we refer your account for collection to an attorney who is not our salaried employee.

## 29. OTHER PAYMENT TERMS

We can accept late payments, partial payments, or payments with any restrictive writing without losing any of our rights

F01-C1125   6/29/06   8:46 AM   Page 1

under this Agreement. This means that no payment, including those marked with "paid in full" or with any other restrictive words, shall operate as an accord and satisfaction without the prior written approval of one of our senior officers. You may not use a postdated check to make a payment. If you do postdate a payment check, we may elect to honor it upon presentment or return it uncredited to the person that presented it, without in either case waiting for the date shown on the check. We are not liable to you for any loss or expense incurred by you arising out of the action we elect to take.

**30. PAYMENT HOLIDAYS AND REDUCED PAYMENT OFFERS**
We may allow you, from time to time, to omit a monthly payment or make a reduced payment. We will notify you when these options are available. If you omit a payment or make a reduced payment, finance charges, applicable fees, and other regular transactions, if any, will accrue on your account balance in accordance with this Agreement. The reduced payment amount may be less than your finance charges. You must make the reduced payment on time to avoid a late fee. You must resume making your regular Total Minimum Payment Due each month following a payment holiday or reduced payment offer.

**31. YOUR CREDIT LIMIT**
Your credit limit is disclosed to you when you receive your card and, generally, on each monthly statement. We may change your credit limit from time to time. The amount shown on your monthly statement as Cash or Credit Available does not take into account any Purchases, Cash Advances, finance charges, fees, any other transactions, or credits which post to your account after the Closing Date of that monthly statement. Such transactions could result in your credit limit being exceeded and result in the assessment of Overlimit Fees, loss of Promotional Rates, and Default Pricing.

**32. WHAT WE MAY DO IF YOU ATTEMPT TO EXCEED YOUR CREDIT LIMIT**
The total outstanding balance on your account plus authorizations at any time must not be more than your credit limit. If you attempt a transaction which results in your total outstanding balance (plus authorizations) exceeding your credit limit, we may: (1) permit the transaction without raising your credit limit; (2) permit the transaction and treat the amount of the transaction that is more than the credit limit as immediately due; or (3) refuse to permit the transaction.

If we refuse to permit the transaction, we may advise the person who attempted the transaction that it has been refused. If we refuse to permit a Check Cash Advance or Balance Transfer, we may do so by advising the person presenting the Check Cash Advance or Balance Transfer that credit has been refused, that there are insufficient funds to pay the Check Cash Advance or Balance Transfer, or in any other manner.

If we have previously permitted you to exceed your credit limit, it does not mean that we will permit you to exceed your credit limit again. If we decide to permit you to exceed your credit limit, which could trigger a promotion turn-off event, we may also charge an Overlimit Fee and/or apply Default Pricing as provided in this Agreement.

**33. WE MAY AMEND THIS AGREEMENT**
We may amend this Agreement at any time. We may amend it by adding, deleting, or changing provisions of this Agreement. We may increase or decrease any or all of your APRs. We may increase any or all of your APRs to rates which exceed the Default Rate. When we amend this Agreement we will comply with the applicable notice requirements of federal and Delaware law that are in effect at that time. The amended Agreement (including any higher rate or other higher charges or fees) will apply to the total outstanding balance, including the balance existing before the amendment became effective. If an amendment gives you the opportunity to reject the change, and if you reject the change in the manner provided in such amendment, we may terminate your right to receive credit and may ask you to return all credit devices as a condition of your rejection. We may replace your card with another card at anytime.

**34. WE MAY SUSPEND OR CLOSE YOUR ACCOUNT**
We may suspend or close your account or otherwise terminate your right to use your account. We may do this at any time and for any reason. Your obligations under this Agreement continue even after we have done this. You must destroy all cards, access checks or other credit devices on the account when we request.

**35. YOU MAY CLOSE YOUR ACCOUNT**
You may close your account by notifying us in writing or by telephone, and destroying all cards, access checks or other credit devices on the account. Your obligations under this Agreement continue even after you have done this.

**36. TRANSACTIONS AFTER YOUR ACCOUNT IS CLOSED**
When your account is closed, you must contact anyone authorized to charge transactions to your account, such as internet service providers, health clubs or insurance companies. These transactions may continue to be charged to your account until you change the billing. Also, if we believe you have authorized a transaction or are attempting to use your account after you have requested to close the account, we may allow the transaction to be charged to your account.

**37. REFUSAL TO HONOR YOUR ACCOUNT**
We are not liable for any refusal to honor your account. This can include a refusal to honor your card or account number or any check written on your account. We are not liable for any retention of your card by us, any other financial institution, or any provider of goods or services.

**38. HOW YOU MAY STOP PAYMENT ON AN ACCESS CHECK**
You may request a stop payment on an access check by providing us with the access check number, dollar amount, and payee exactly as they appear on the access check. Oral and written stop payment requests on an access check are effective for six months from the day that we place the stop payment.

**39. YOU MAY NOT POSTDATE AN ACCESS CHECK**
You may not issue a postdated access check on your account. If you do postdate an access check, we may elect to honor it upon presentment or return it unpaid to the person that presented it to us for payment, without in either case waiting for the date shown on the access check. We are not liable to you for any loss or expense incurred by you arising out of the action we elect to take.

**40. TRANSACTIONS MADE IN FOREIGN CURRENCIES**
If you make a transaction in a foreign currency, the transaction will be converted by Visa International or MasterCard International, depending on which card you use, into a U.S. dollar amount in accordance with the operating regulations or conversion procedures in effect at the time that the transaction is processed. Currently, these regulations and procedures provide that the currency conversion rate to be used is either (1) a wholesale market rate or (2) a government-mandated rate in effect one day prior to the processing date. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date.

**41. BENEFITS**
We may offer you certain benefits and services with your account. Any benefits or services are not a part of this Agreement, but are subject to the terms and restrictions outlined in the benefits brochure and other official documents provided to you from time to time by or on behalf of FIACS. While any benefits or services described in the previous sentence are not a part of this Agreement, any claim or dispute related to any such benefit or service shall be subject to the Arbitration and Litigation section of this Agreement. We may adjust, add, or delete benefits and services at any time and without notice to you.

**42. WE MAY SELL YOUR ACCOUNT**
We may at any time, and without notice to you, sell, assign or transfer your account, any sums due on your account, this Agreement, or our rights or obligations under your account or this Agreement to any person or entity. The person or entity to whom we make any such sale, assignment or transfer shall be entitled to all of our rights and/or obligations under this Agreement to the extent sold, assigned or transferred.

**43. YOU MUST NOTIFY US WHEN YOU CHANGE YOUR ADDRESS**
We strive to keep accurate records for your benefit and ours. The post office and others may notify us of a change to your address. When you change your address, you must notify us promptly of your new address.

**44. WHAT LAW APPLIES**
This Agreement is made in Delaware and we extend credit to you from Delaware. This Agreement is governed by the laws of the State of Delaware (without regard to its conflict of laws principles) and by any applicable federal laws.

**45. THE PROVISIONS OF THIS AGREEMENT ARE SEVERABLE**
If any provision of this Agreement is found to be invalid, the remaining provisions will continue to be effective.

**46. OUR RIGHTS CONTINUE**
Our failure or delay in exercising any of our rights under this Agreement does not mean that we are unable to exercise these rights later.

**47. UNAUTHORIZED USE OF YOUR CARD**
Please notify us immediately of the loss, theft, or possible unauthorized use of your account at (800) 732-9194 and (800) 651-2803 for Spanish.

**48. ARBITRATION AND LITIGATION**
This Arbitration and Litigation provision applies to you unless you were given the opportunity to reject the Arbitration and Litigation provisions and you did so reject them in the manner and timeframe required. If you did reject effectively such a provision, you agreed that any litigation brought by you against us regarding this account or this Agreement shall be brought in a court located in the State of Delaware.

Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), shall, upon election by either you or us, be resolved by binding arbitration. The arbitrator shall resolve any Claims, including the applicability of this Arbitration and Litigation Section or the validity of the entire Agreement or any prior Agreement, except for any Claim challenging the validity of the Class Action Waiver, which shall be decided by a court.

In addition, we will not choose to arbitrate an individual Claim that you bring against us in small claims court or an equivalent court, if any. But if that Claim is transferred, removed or appealed to a different court, we then have the right to choose arbitration.

Arbitration shall take place before a single arbitrator and on an individual basis without resort to any form of class action. Arbitration may be selected at any time unless a judgment has been rendered or the other party would suffer substantial prejudice by the delay in demanding arbitration.

The arbitration shall be conducted by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the time the Claim is filed. Rules and forms of the National Arbitration Forum may be obtained and Claims may be filed at any National Arbitration Forum office, www.arbitration-forum.com or P.O. Box 50191, Minneapolis, Minnesota 55405, telephone (800) 474-2371. If the NAF is unable or unwilling to act as arbitrator, we may substitute another nationally recognized, independent arbitration organization that uses a similar code of procedure. At your written request, we will advance any arbitration filing fee, administrative and hearing fees which you are required to pay to pursue a Claim in arbitration. The arbitrator will decide who will be ultimately responsible for paying those fees. If you file a claim against us, in no event will you be required to reimburse us for any arbitration filing, administrative or hearing fees in an amount greater than what your court costs would have been if the Claim had been resolved in a state court with jurisdiction.

Any arbitration hearing at which you appear will take place within the federal judicial district that includes your billing address at the time the Claim is filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). Judgment upon any arbitration award may be entered in any court having jurisdiction. The arbitrator shall follow existing substantive law to the extent consistent with the FAA and applicable statutes of limitations and shall honor any claims or privilege recognized by law. If any party requests, the arbitrator shall write an opinion containing the reasons for the award.

No Claim submitted to arbitration is heard by a jury or may be brought as a class action or as a private attorney general. You do not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim submitted to arbitration (Class Action Waiver). The parties to this Agreement acknowledge that the Class Action Waiver is material and essential to the arbitration of any disputes between the parties and is nonseverable from this agreement to arbitrate Claims. If the Class Action Waiver is limited, voided or found unenforceable, then the parties' agreement to arbitrate (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. The Parties acknowledge and agree that under no circumstances will a class action be arbitrated.

This Arbitration and Litigation Section applies to all Claims now in existence or that may arise in the future. This Arbitration and Litigation Section shall survive the termination of your account with us as well as any voluntary payment of the debt in full by you, any bankruptcy by you or sale of the debt by us.

For the purposes of this Arbitration and Litigation Section, "we" and "us" means FIA Card Services, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any purchaser of your account, and all of their officers, directors, employees, agents and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to credit bureaus, merchants that accept any credit device issued under the account, rewards or enrollment services, credit insurance companies, debt collectors and all of their officers, directors, employees and agents) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

YOU UNDERSTAND AND AGREE THAT IF EITHER YOU OR WE ELECT TO ARBITRATE A CLAIM, THIS ARBITRATION SECTION PRECLUDES YOU AND US FROM HAVING A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH COURT, OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS. EXCEPT AS OTHERWISE PROVIDED ABOVE, ALL CLAIMS MUST BE RESOLVED THROUGH ARBITRATION IF YOU OR WE ELECT TO ARBITRATE.

## YOUR BILLING RIGHTS

**Keep This Notice for Future Use:** This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill:** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet (or use a copy of the form provided on your bill) at FIA Card Services, N.A., P.O. Box 15026, Wilmington, DE 19850. Write to us as soon as possible. Do not send the notice on or with your payment. We must hear from you no later than 60 days after we sent you the first bill on which the transaction or error appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information: (1) your name and account number; (2) the dollar amount of the suspected error; (3) the posting date of the transaction in question; and (4) a description of the error and an explanation, if you can, of why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account with us, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

## SUPPLEMENT TO THE NOTICE OF CHANGE IN TERMS

PC002

Enclosed with this statement you will find a document entitled "Important Notice Of Change In Terms". That document, together with the terms below, constitute your new Credit Card Agreement and replace in whole your existing Cardholder Agreement. Please see the corresponding Sections in the enclosed Credit Card Agreement for additional terms. Section numbers are for reference purposes only. This Supplement provides information related to specific sections, and highlights certain sections that are changing. Please read these documents carefully and retain them for your records.

**Section 4.  Annual Percentage Rates**
As a part of the conversion, we will be restructuring your account balances. In some cases we will consolidate existing balances into a single category. When we do so, we will honor, or lower, the existing Annual Percentage Rates, including any existing promotional rates or default rates that may be available on this account.

**Section 5.  Default Pricing**
For each balance category, we may increase the APR on all new and outstanding balances up to the Default Rate, without giving you additional notice, when, during any twelve consecutive rolling billing cycles: (1) we do not receive two Total Minimum Payments Due by their respective Payment Due Dates; or (2) your total outstanding balance exceeds your credit limit on your Closing Dates in two billing cycles. Each such increase will be effective as of the first day of the billing cycle in which the Default Rate is applied. Cure Period: All Default Rates will remain in effect until, for six consecutive billing cycles, you make each Total Minimum Payment Due by its Payment Due Date and your account balance does not exceed the credit limit at any time during those billing cycles. We reserve the right to amend the Agreement and change the APRs even if you are in a Cure Period.
See enclosed Credit Card Agreement for complete terms.

**Section 8.  When Periodic Rate Finance Charges Begin To Accrue**
See enclosed Credit Card Agreement for complete terms.

**Section 9.  Grace Period**
You do not have a Grace Period for Category A or Category B Cash Advances. You will have a Grace Period on new Category C Purchases and new Category D Other Balances, in a billing cycle in which you Pay in Full, from the day after the Pay in Full date until the end of that billing cycle. You will have a Grace Period for an entire billing cycle on new Category C Purchases and new Category D Other Balances and on Category C and Category D balances remaining from previous billing cycles if you Pay in Full by the Payment Due Date in that billing cycle and if during the previous billing cycle you Paid in Full.

**Section 10.  Calculation of Balances Subject to Finance Charge**
Categories A and B -- Average Balance Method (including new Cash Advances)
See enclosed Credit Card Agreement for complete terms.

Categories C and D - Average Daily Balance Method (including new transactions): We calculate separate Balances Subject to Finance Charge for Category C balances and Category D balances. We calculate the Balance Subject to Finance Charge for each of these balance categories by: (1) calculating a daily balance for each day in the current billing cycle; (2) adding all the daily balances together; and (3) dividing the sum of the daily balances by the number of days in the current billing cycle.

To calculate the daily balance for each day in the current billing cycle, we take the beginning balance, add an amount equal to the applicable Daily Periodic Rate multiplied by the previous day's daily balance, add, unless subject to a Grace Period, new transactions, new Account Fees, and new Transaction Fees, and subtract applicable payments and credits. If any daily balance is less than zero we treat it as zero. If in the current billing cycle you Pay in Full, then on the day after that Pay in Full date, we exclude from the beginning balance new transactions, new Account Fees, and new Transaction Fees which posted on or before the Pay in Full date.

We include the costs for the Credit Security Plan purchased through us in calculating the beginning balance for the first day of the billing cycle after the billing cycle in which such costs are billed.

**Section 11.  Minimum Finance Charge**
If the total of the Periodic Rate Finance Charges for all balance categories is less than $1.50, then a minimum FINANCE CHARGE of $1.50 will be assessed on the account in lieu of any Periodic Rate Finance Charge. This minimum FINANCE CHARGE will be allocated to a balance category with a Balance Subject to Finance Charge.

**Section 12.  Transaction Fee Finance Charges**
If you obtain an ATM Cash Advance, we will assess a transaction fee (FINANCE CHARGE) equal to 3% of the U.S. dollar amount of each such Cash Advance (Fee: Min. $10.00).

If you obtain a Balance Transfer, we will assess a transaction fee (FINANCE CHARGE) equal to 4% of the U.S. dollar amount of each such Cash Advance (Fee: Min. $10.00; Max. $90.00).

If you obtain a Bank Cash Advance (other than through an overdraft transaction), we will assess a transaction fee (FINANCE CHARGE) equal to 3% of the U.S. dollar amount of each such Cash Advance (Fee: Min. $10.00).

If you make a Foreign Transaction, we will assess a transaction fee (FINANCE CHARGE) equal to 3% of the U.S. dollar amount of each such Foreign Transaction. This is in addition to any other applicable transaction fees.

If you have enrolled this account to provide overdraft protection, we will assess a transaction fee (FINANCE CHARGE) equal to 3% of the U.S. dollar amount of each such overdraft transaction that posts to this account (Fee: Min. $10.00).

If you use your card to purchase Cash Equivalents, we will assess a transaction fee (FINANCE CHARGE) equal to 3% of the U.S. dollar amount of each such Cash Equivalent (Fee: Min. $10.00). This fee does not apply to out-of-network bill payments made through FIACS' online payment service.

If you obtain a Check Cash Advance, we will assess a transaction fee (FINANCE CHARGE) equal to 4% of the U.S. dollar amount of each such Cash Advance (Fee: Min. $10.00; Max. $90.00).

**Section 13.  Account Fees**
The following fees are assessed as Purchases in the billing cycle in which the fees accrue:

Annual Fee: If you have an Annual Fee on your account the amount remains unchanged. The Annual Fee will be assessed each year if your account is open or if you maintain an account balance, whether or not you have active charging privileges.

An Overlimit Fee in each billing cycle when your total outstanding balance exceeds your credit limit. The Overlimit Fee will be assessed even if fees or finance charges assessed by us cause your total outstanding balance to exceed your credit limit. The Overlimit Fee will be assessed as of the first day in the billing cycle that your total outstanding balance was over your credit limit. No more than one Overlimit Fee will be charged in each billing cycle.

If your Previous Balance exceeds your credit limit at the beginning of a billing cycle, you will have an opportunity to avoid an Overlimit Fee in that billing cycle. To avoid an Overlimit Fee in that billing cycle, your total outstanding balance must be less than or equal to your credit limit on the 20th day of the billing cycle and must remain below the credit limit for the rest of that billing cycle. If your total outstanding balance exceeds your credit limit on the 20th day of that billing cycle you will be assessed an Overlimit Fee as of the 20th day. If your total outstanding balance is less than your credit limit on the 20th day of that billing cycle but exceeds your credit limit on any day after the 20th day, you will be assessed an Overlimit Fee as of the first day after the 20th day in which your total outstanding balance exceeds your credit limit.

An Overlimit Fee: The amount of the Overlimit Fee is based on the amount of your total outstanding balance on the date as of which the Overlimit Fee is assessed and is as follows:
- if the total outstanding balance is $500.00 or less, the Overlimit Fee will be $15.00;
- if the total outstanding balance is greater than $500.00 but $1,000.00 or less, the Overlimit Fee will be $29.00;
- if the total outstanding balance is greater than $1,000.00, the Overlimit Fee will be $39.00.

A Late Fee, if the Total Minimum Payment Due shown on your monthly statement is not received by us on or before its Payment Due Date. On the Late Fee transaction date:
- if the total outstanding balance is $100.00 or less, the Late Fee will be $15.00;
- if the total outstanding balance is greater than $100.00 but $250.00 or less, the Late Fee will be $29.00;
- if the total outstanding balance is greater than $250.00, the Late Fee will be $39.00.

A Returned Payment Fee of $39 if a payment on your account is returned for insufficient funds or for any other reason, even if it is paid upon subsequent presentment (if we elect to re-present the payment).

A Returned Check Cash Advance Fee of $39 if we return an access check unpaid for any reason, even if the access check is paid upon subsequent presentment.

A Copy Fee of $5.00 for each copy of a monthly statement or sales draft, except that the six most recent monthly statements and one sales draft will be provided for free.

An Abandoned Property Fee equal to any costs incurred by us for complying with state abandoned property laws, unless prohibited by applicable law.

## Section 22. Payments on Your Account

We process most payment checks electronically. We use the information on your check to create an electronic funds transfer. Each time you send a check, you authorize a one-time electronic funds transfer. You also authorize us to process your check as a check or paper draft, as necessary. Funds may be withdrawn from your account as soon as the same day we receive your payment. You will not receive your cancelled check because we are required to destroy it. We will retain an electronic copy. For more information or to stop the conversion of your checks into electronic funds transfers, call us at the phone number listed on your monthly statement or on your card. You may also write to us at: P.O. Box 15019, Wilmington, DE 19850-5019.
See enclosed Credit Card Agreement for additional terms.

## Section 23. Total Minimum Payment Due

The Current Payment for each billing cycle includes three amounts: (1) 1% of your balance (your New Balance Total except for any new Periodic Rate Finance Charges, and Late Fee), and (2) new Periodic Rate Finance Charges, and (3) new Late Fee. The Current Payment is capped. Generally, the lowest it will be is $15.00 and the highest it could be is 5% of your New Balance Total. We round the payment amount down to the nearest dollar. If a Payment is credited to your account but is returned unpaid in a later billing cycle, we will recalculate the Total Minimum Payment Due for the billing cycle in which the payment was originally credited.

See enclosed Credit Card Agreement for additional terms.

*****************************************************************************************************

## Important Information About Payments by Phone

With our optional Pay-By-Phone service, one of the fastest ways to make a payment, your payment will be electronically deducted from your bank account.

When you use the optional Payment by Phone service, you authorize us to initiate an electronic payment from your account at the financial institution you designate. You must authorize the amount and timing of each payment. For your protection, we will ask for security information. A service fee may apply. Please retain this authorization document for your records.

Payments are credited as of the date you request, so long as your request is made by 5 pm ET. You have until 3:30 pm ET on the day of the scheduled payment to cancel that payment. To cancel, please call us at the customer service number listed on your statement.

# EXHIBIT 2

# Bank of America.

## CARDHOLDER AGREEMENT

### Section 1: INTRODUCTORY PROVISIONS

**1.1: Contents and Effectiveness of Agreement.** This Agreement governs your credit card account ("Account") with us. It consists of this document, an attached "Additional Disclosure" and other documents that we may refer to as part of this Agreement. The Agreement becomes effective and you agree to its terms by either using your Account or by not closing your Account within 3 days of receipt of this Agreement.

**1.2: Parties to Agreement.** "We," "us," and "our" refer to Bank of America, N.A. (USA). "You," "your," and "yours" refer to any person (a) whose name appears on a Card or Statement or who uses this Account, or (b) who otherwise agrees to be liable on the Account.

**1.3: Definitions.** In addition to other terms defined throughout the Agreement, the following terms have the meaning indicated in this Section:

1.3.1: "APR" means Annual Percentage Rate.

1.3.2: "Billing Cycle" means a period of about one month ending on a billing date.

1.3.3: "Card" means a Bank of America credit card issued on your Account.

1.3.4: "Check" means a check drawn on your Account.

1.3.5: "Margin" means the number of percentage points added to the Index to determine an APR.

1.3.6: "MasterCard" means MasterCard International, Inc.

1.3.7: "Statement" means an Account billing statement.

1.3.8: "Unauthorized Charge" means a transaction made on your Account by a person, other than any one of you, who does not have actual, implied, or apparent authority to make such transaction, and from which none of you receive any benefit.

1.3.9: "Visa" means Visa U.S.A. Inc.

### Section 2: USE OF YOUR ACCOUNT

**2.1: Types of Transactions.** You may use your Account for the following types of consumer transactions:

2.1.1: **Purchases.** Purchase goods or services with your Card.

2.1.2: **Cash Advances.** Obtain cash from a participating financial institution or merchant ("Cash Disbursement") or from an ATM ("ATM Advance"), write a Check for any legal purpose ("Check Advance") or purchase money orders, travelers checks, foreign currency, lottery tickets, casino chips, racetrack wagers, vouchers redeemable for cash or other items readily convertible into cash ("Quasi Cash"), or transfer funds from your Account to your Bank of America personal checking account for overdraft protection ("Overdraft Protection").

2.1.3: **Balance Transfers.** Transfer balances to your Account from other creditors.

**2.2: Limitations on Use.**

2.2.1: **General; Consumer Account.** In addition to any other contractual or legal restrictions, the use of your Account is limited as described below. Your Account is a consumer Account and should not be used for business purposes.

— 1 —

---

**7.10: Lost or Stolen Cards and Checks.** If your Card or Checks are lost or stolen, or if you think your Account is being used without your permission, you must notify us immediately by calling the "Lost or Stolen Card" number on your Statement.

**7.11: Transactions With Merchants.**

7.11.1: **Return Policy.** If a merchant discloses a policy such as "no return," "no refund," "no returns or credit without receipt," "as is", "store credit only", or "all sales final", you will be bound by that policy when you use your Account to buy goods or services from that merchant.

7.11.2: **Reservations.** When using your Account to make travel or lodging reservations, obtain the merchant's cancellation policy and follow it if you cancel. If you cancel, obtain the merchant's cancellation number that it is required to give you. The merchant may charge you for a cancelled transaction unless you can provide us with the merchant's cancellation number.

7.11.3: **Recurring Transactions.** If you authorize a merchant to charge your Account for repeat transactions without your Card, you must notify the merchant when you want to discontinue the repeat transactions or if your Account is closed or a new Account number is issued by us.

7.11.4: **Dispute Assistance.** If you disagree with a transaction on your Statement or have a dispute with the merchant as a result of the transaction, you will provide information or assistance we reasonably request. You will pay us for any resulting loss we have unless we are prohibited by applicable law from holding you liable for our loss.

**7.12: Default.** Your Account is in default if you fail to comply with any of the terms of this Agreement or any other loan agreement with us; the event of your death, incompetency, bankruptcy, insolvency, fraud or misrepresentation; or if we reasonably believe that you will be unwilling or unable to pay debts you owe to anyone. If you are in default, we may close your Account without notice, and you must immediately pay your unpaid balance. To the extent not prohibited by law, if you are in default, you will pay our collection costs, attorneys fees (including allocated costs for attorneys who are employed by us), court costs and all other expenses of enforcing our rights under this Agreement.

**7.13: Closing Your Account.** You may close your Account by notifying us. We may close your Account or suspend your credit privileges at any time without prior notice except as required by law. You will stop using your Account and destroy all Cards and Checks on your Account. All Liable Parties and Authorized Users' liability will apply to all balances and transactions made on the Account even if they are made or processed after the date the Account is closed.

If we receive a request from any Liable Party to remove another Liable Party from the Account, we may honor or refuse the request without prior notice.

**7.14: Amendment of this Agreement.** We may amend this Agreement by changing, adding or deleting any term, condition, service or feature ("New Term") of your Account or of this Agreement at any time. We will provide you with notice of the amendment to the extent required by law. Unless we state otherwise, any New Term will apply to your Account's unpaid balance and to new activity on your Account. If the amendment includes any change to the rate or rates of periodic interest that applies to your unpaid balances and to the rate your consent before that New Term becomes effective. If we need to do so, we may obtain your consent in any one or more of the following ways: (a) by your usage of the Account after we give you notice of the amendment; (b) by your failure to write to us within the time that you write to us to reject a New Term, or (c) by your affirmative agreement which may be obtained verbally, in writing or electronically. Any other term in the amendment will become effective without your consent, although you may be able to avoid a fee or charge by not making the type of transaction to which it applies after the effective date of the amendment.

— 6 —

---

**7.15: Foreign Currency Transactions.** If you make a transaction in currency other than U.S. dollars, Visa or MasterCard will convert the charge or credit into a U.S. dollar amount. The conversion rate will be determined using Visa or MasterCard currency conversion procedures that are disclosed to institutions issuing Visa or MasterCard credit cards. The conversion rate on the processing date may differ from the rate on the date of your transaction. Currently, Visa and MasterCard use a currency conversion rate of either (1) a wholesale market rate by us and Visa or MasterCard. In each case, Visa uses the rate in effect one day before the conversion date and MasterCard uses a rate for the processing cycle. The adjustment factor, which is subject to change without notice, is currently 3% of the remainder. We will post to your Account a rate for the processing cycle. The U.S. dollar amount, of which we receive 2% and Visa or MasterCard receives the determined by Visa or MasterCard as described above.

**7.16: Telephone Monitoring.** We may listen to and record telephone calls between you and us for the purpose of monitoring and improving the quality of service you receive.

**7.17: Enforceability.** Our failure to exercise any of our rights under this Agreement will not waive any of our rights in the future. If any terms of this Agreement are found to be unenforceable, all other provisions will remain in full force.

**7.18: Governing Law. THIS AGREEMENT IS GOVERNED BY APPLICABLE ARIZONA AND FEDERAL LAW.**

**7.19: Arbitration.** Any dispute, claim, or controversy ("Claim") by or between you and us (including each other's employees, agents or assigns) arising out of or relating to this Agreement, your Account, or the validity or scope of any provision of this Agreement including this arbitration clause shall, upon election by either you or us, be resolved by binding arbitration. Arbitration shall take place before a single arbitrator on an individual basis without resort to any form of class action. Arbitration may be selected at any time unless a judgment has been rendered or the other party would suffer substantial prejudice by the delay in demanding arbitration.

Arbitration, including selection of an arbitrator, shall be conducted in accordance with the rules for arbitration of financial services disputes of J.A.M.S./Endispute ("JAMS"). You may call JAMS at 949.224.1810, or write to JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, to obtain rules and forms to initiate arbitration. If JAMS is unable or unwilling to serve as the provider of arbitration, we may substitute another national arbitration organization with similar procedures. This arbitration section of this Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1-16. Judgment upon arbitration may be entered in any court having jurisdiction. Arbitration shall be conducted in the federal judicial district in which your billing address is located at the time the claim is filed. If we request arbitration, we will enforce applicable JAMS fees and expenses. If the arbitrator rules in favor of one party against the other, the other party shall pay all reasonable attorneys' fees and costs of the action on behalf of both parties (including any fees and expenses paid by one party on behalf of other) unless the arbitrator or court decides such an award would cause a substantial injustice based on the facts and legal arguments set forth in the action.

YOU UNDERSTAND AND AGREE THAT IF EITHER YOU OR WE ELECT TO ARBITRATE A CLAIM, THIS ARBITRATION SECTION PRECLUDES YOU AND US FROM HAVING A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH COURT, OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS EXCEPT AS OTHERWISE PROVIDED ABOVE. ALL CLAIMS MUST BE RESOLVED THROUGH ARBITRATION IF YOU OR WE ELECT TO ARBITRATE.

This Section shall not apply to any action in California if your Account was opened as a BankAmericard Account before July 1, 1982 unless you write to us at the "Billing Inquiries" address and request that it apply to your Account.

— 7 —

---

BILLING RIGHTS SUMMARY

Notify Us in Case of Errors or Questions About Your Bill

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us in a separate letter at the "Billing Inquiries" address on your billing statement. Write us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• Your name and Account number.
• The dollar amount of the suspected error.
• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

Your Rights and Our Responsibilities After We Receive Your Written Notice

We must acknowledge your letter within 30 days, unless we corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill you will not have to pay any finance charge related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

Special Rule for Credit Card Purchases

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You may have the right not to pay the remaining amount due on the right:

a. You must have made the purchase in your home state or if not within your home state, within 100 miles of your current mailing address and

b. The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

F01-9901-1 3-00

Bank of America, N.A. (USA)
© 2000 Bank of America

— 8 —

**2.2.2: Legal Transactions.** You will only use your Account for transactions that are legal where you reside. For example, internet gambling transactions may be illegal in your state. Display of a payment card logo by an on-line merchant does not mean that an internet transaction is legal where you reside. We will not be liable if you engage in an illegal transaction.

**2.2.3: Credit Line and Cash Limit.** Your Account has a credit line ("Line") shown on your Account or Statement. You will not allow your Account balance to exceed the amount of this Line. If your Statement also shows a limit for Cash Advances ("Cash Limit"), you will not allow your Cash Advance balance to exceed your Cash Limit. We may change your Line or Cash Limit at any time. We may, but are not required to, approve transactions that exceed your available Line or Cash Limit.

**2.2.4: Authorizations.** Some transactions require our prior authorization. We may limit the number of authorizations we give in a day. We may deny authorization if you are in default (as defined in Section 7.12), if we suspect fraudulent activity or for any other reason. We are not liable for any failure to authorize a transaction. You are liable for any transaction we authorize even if we should not have authorized it because you are or would be in default as a result of the transaction.

**2.2.5: Unpaid Checks.** We may reject and return unpaid a Check you write because:

(a) Your available Line or Cash Limit has been or would be exceeded by paying the Check at the time it is presented to us;

(b) Your Check is post-dated. If a post-dated Check is paid, resulting in another check being returned or not paid, we are not responsible;

(c) The date of your Check is more than 6 months old;

(d) Your Account is closed or suspended;

(e) You are in default or would be as of we paid the Check;

(f) Your signature or the payee's name or endorsement is missing on the Check, or the Check appears altered.

If we pay any Check under any condition, you must pay us the amount of the Check plus applicable fees and charges unless such liability is precluded by law.

## Section 3: FINANCE CHARGES

**3.1: Grace Period.** We do not charge any periodic Finance Charges on your new Purchases if (1) You pay your New Balance in full by your Payment Due Date, or (2) Your previous New Balance was zero or a credit balance. There is no grace period for Cash Advances and Balance Transfers.

**3.2: Periodic Finance Charge Calculation.** For each day in the Billing Cycle, we take your beginning balance, add any new transactions or other debits, and subtract any payments or other credits. This gives us that day's Daily Balance. We multiply this Daily Balance by the Daily Periodic Rate to get your Periodic Finance Charges for that day. We add these Periodic Finance Charges to your Daily Balance to get the beginning balance for the next day.

To get your total Periodic Finance Charges for that Billing Cycle, we add all the Daily Periodic Finance Charges and round the sum to the next highest cent. This amount is also equal to the Average Daily Balance multiplied by the Daily Periodic Rate and then multiplied by the number of days in the Billing Cycle. To determine the Average Daily Balance, we add all your Daily Balances and divide by the number of days in the Billing Cycle.

We do this calculation separately for each feature such as Purchases, Cash Advances, Balance Transfers or Promotional Balances. Periodic Finance Charges begin to accrue from the later of the transaction date or the billing date of the Statement on which the transaction appears.

**3.3: Periodic Rates And Annual Percentage Rates**

**3.3.1: Rates.** The Daily Periodic Rates and the corresponding Annual Percentage Rates for your Account are listed on the "Additional Disclosure". The Daily Periodic Rate is the corresponding Annual Percentage Rate divided by the number of days in a year rounded to the next highest hundred thousandth of a percentage point.

**3.3.2: Variable Rate Information.** The variable rates listed in the "Additional Disclosure" are determined by adding a Margin listed in the "Additional Disclosure" to an Index. The Index is the prime rate published in the Money Rates section of The Wall Street Journal ("Index Rate(s)"). The variable Periodic Rates and corresponding Annual Percentage Rates will increase if the Index increases or decrease if the Index decreases. The changes to these variable rates will become effective on the first day of your Billing Cycle that ends in the calendar month following the Index Date. An increase in your Periodic Rate and corresponding Annual Percentage Rate will increase the amount of Finance Charges on your Account and may increase your Minimum Payment Due.

**3.4: Minimum Purchase Finance Charge.** Wherever the Purchase balance is subject to a periodic Finance Charge, we will charge the greater of that periodic Finance Charge or the Minimum Finance Charge for Purchases shown in the "Additional Disclosure".

**3.5: Cash Advance and Balance Transfer Fees.** For each Cash Advance, we will charge the Cash Advance Fees shown on the "Additional Disclosure", rounded to the next highest cent, and add the fee to the Cash Advance balance on the transaction date. Balance Transfers and Promotional Balances will also incur these Cash Advance Fees unless we state otherwise in our offer.

## Section 4: OTHER FEES AND CHARGES

**4.1: Types of Other Fees and Charges.** We will charge the following fees and other charges:

**4.1.1: Annual Fee.** If an Annual Fee applies to your Account, it will be billed each year.

**4.1.2: Late Payment Fee.** A Late Payment Fee if we do not receive at least the Minimum Payment Due by its Payment Due Date.

**4.1.3: Overlimit Fee.** An Overlimit Fee if your Account exceeds its Line at any time during a Billing Cycle.

**4.1.4: Returned Payment Fee.** A Returned Payment Fee for any payment on your Account that is returned to us unpaid.

**4.1.5: Stop Payment Fee.** A Stop Payment Fee for any request made to us to stop payment on a Check unless we have posted the Check to your Account before your request.

**4.1.6: Copy Charge.** A Copy Charge for a Statement, sales draft, Check, or other record of your Account other than for a billing dispute you may assert against us pursuant to applicable law.

**4.1.7: Research Fee.** A Research Fee for our time researching something requested on your Account other than for a billing dispute you may assert against us pursuant to applicable law.

**4.2: Amount of Other Fees and Charges.** The amount of Other Fees and Charges are listed on the "Additional Disclosure" and added to the Purchase balance of the Account on the date they are assessed.

## Section 5: YOUR LIABILITY

**5.1: Liable Parties.** If your name appears on a Statement, our records show that you are liable for the full balance due on the Account. By using your Account or making a payment on the Account knowing that your name appears on any Statement, you agree that our records are accurate. In addition, you are liable for

the full balance due on the Account if you have agreed to be liable even if your name does not appear on a Statement. In each case described above, you will be individually and jointly liable ("Liable Party") for all credit extended on the Account (other than for Unauthorized Charges) including any Finance Charges, Other Fees and Charges, and expenses as provided in this Agreement. If your legal residence or Statement address is in a country outside the United States, the government of that country may impose a withholding tax on the Finance Charges due on your Account. You are liable for such tax and we may charge the amount of the tax to you from your Account if you do not pay.

**5.2: Other Users of the Account.** If you are not a Liable Party and you use this Account, you are liable for each transaction you make on the Account plus any Finance Charges, Other Fees and Charges, and expenses provided in this Agreement and related to such transactions. If you are an Authorized User (as defined in Section 7.9), your liability does not relieve any Liable Party under this Agreement from liability for the Authorized User's transactions until paid.

## Section 6: YOUR PAYMENTS

**4.1: Promise to Pay.** You promise to pay us for all transactions on your Account for which you are liable under Section 5 or by law. If a bank branch or office sponsors your Account, you promise to pay if any unpaid Account balance it pays us within 30 days. If an Account payment is invalid, we will reverse any credit previously provided for such payment.

**6.2: Allocation of Payments.** We will determine, at our option, the order in which payments will be applied toward Purchases, Cash Advances, Balance Transfers, unpaid Finance Charges and Other Fees and Charges.

**6.3: Minimum Payment Due.** You will pay at least the Minimum Payment Due in the amount shown in your "Additional Disclosure" by the Payment Due Date on your Statement.

**6.4: Form of Payment.** For all amounts you owe on your Account, you will pay us in U.S. dollars. All payments (other than cash payments at our Banking Centers or ATMs) must be drawn from funds on deposit in a U.S. depository financial institution. We may, at our option, accept payments made in foreign currency or checks drawn on non-U.S. banks. If we do, we may impose service and collection charges. Our determination of service and collection charges will be final. We are not required to accept any payment that we deem to require special handling.

**6.5: Payments Marked "Paid in Full".** We may accept letters, checks or other types of payment showing "payment in full" or using other language to indicate satisfaction of your debt, without waiving any of our rights to receive full payment under this Agreement. You must send any such communication to the "Billing Inquiries" address on your Statement. Satisfaction of your debt for less than the full amount due requires a written agreement, signed by one of our authorized associates.

## Section 7: OTHER IMPORTANT INFORMATION

**7.1: Signature.** You should sign the back of your Card as soon as you receive it to help protect your Card against unauthorized use. However, your liability under Section 5 does not depend whether you sign your Card.

**7.2: No Security Interest on Purchases.** This Agreement does not grant us a security interest in Purchases you charge to your Account.

**7.3: Account Materials.** We may send Account materials (Cards, Statements and notices) to any Liable Party, and that person will be responsible for delivering those materials to the other Liable Parties and Authorized Users. Notice to any of you will be considered notice to all of you.

**7.4: Change of Personal Information.** You will notify us in writing immediately if you change your name, address or home or business telephone number.

**7.5: Credit Information.** We may periodically review your credit standing by obtaining information from credit reporting agencies and others concerning your

accounts. You will provide updated financial information upon our request. In addition, we may report information about you to credit reporting agencies. You have the right to dispute the accuracy of information we have reported. If you wish to do so, write to: Bank of America, P.O. Box 53105, Attn: CBR Disputes (AZ9-503-02-16), Phoenix, AZ 85072-3105. Please include your name, address, Account number, telephone number, social security number and a brief description of the problem. If available, please include a copy of the credit report in question.

**7.6: Stopping Payment on Checks.** To stop payment on a Check you write, you must call us at the Customer Service number shown on your Statement with all the following information: the exact dollar amount of the Check; the Check number; your Account number; the name of the party to whom the Check was written and the name of the person who signed the Check.

We will stop payment on the Check if we receive your stop payment request by the business day before the day we pay your Check. The date we pay the Check may be before the date it posts to your Account. The stop payment order will remain effective for 6 months. You may write to us to cancel the order at any time.

**7.7: Sharing Information.** We share information with our affiliates and others as described below:

**7.7.1: Sharing Information with Affiliates and Others.** We may share information that is solely about our transactions or experiences with you or your Account ("Experience Information") to our affiliates and others such as Visa, MasterCard, or your other creditors. We may also share with our affiliates non-experience information ("Non-Experience Information") such as information contained in your credit application or obtained by us from other sources. **You can instruct us not to share Non-Experience Information** by sending a written request to: Bank of America, c/o Data Integrity, P.O. Box 27025, Richmond, VA 23261-7025. Please be sure to include your name, address, telephone number, Account number, and social security number with your correspondence.

**7.7.2: Sharing Information with Companies that Work for Us.** We may occasionally share information with outside companies that work for us. These companies act on our behalf and are obligated to keep the information that we provide to them confidential.

**7.8: Solicitations.** We carefully select quality products and services to offer you discount savings and other valuable benefits arranged specially for our cardholders. You have choices when it comes to learning about new offers and services. For example, you can choose not to receive notification about any offers made by mail, telephone or e-mail. To tell us your preferences, you can: (1) Visit your nearby Banking Center; (2) Call us at the telephone number listed on your Statement; (3) Send us an e-mail, or (4) Write to us at the "Billing Inquiries" address on your Statement. Please be sure to include your name, address, telephone number, Account number, and social security number with your correspondence.

**7.9: Authorized Users.** You may allow Authorized Users on your Account in the following ways: (1) by notifying us that you want someone added to your Account as an Authorized User, (2) by lending your Card or Account number to another, or (3) by any other ways in which you would be legally considered to have allowed another to use your Account or to be legally prevented from denying that you did so. You must think carefully before you allow anyone to become an Authorized User. By doing so, you authorize the person to use your Account to the same extent you can, including but not limited to making any Purchases, Cash Advances, Balance Transfers and allowing others to use your Account. Your Account does not permit you to limit the nature or amount of authority you give to any Authorized User and you will not attempt to do so. An Authorized User's authority will continue until you both notify us that you are terminating the authority and you physically retrieve the Card. If you cannot retrieve the Card, you will remain liable for any transactions that we cannot prevent after you notify us.

— 2 —

— 3 —

— 4 —

— 5 —

## CERTIFICATE OF SERVICE

I, Karen V. Sullivan, Esquire, hereby certify that a copy of the foregoing Affidavit of

Robert Winzinger in Opposition to Plaintiff's Motion to Amend Complaint was served by first

class U.S. mail on this 31st day of October, 2007 on the following non-registered CM/ECF

participant:


Herman Kelly
P.O. Box 14157
Detroit, MI 48214


            /s/ Karen V. Sullivan
            KAREN V. SULLIVAN (No. 3872)